**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

HEIDI DAVONNE BROWN,

    Plaintiff,

        v.                        CASE NO. 3:24-CV-261-SJF

SOUTH BEND HOUSING AUTHORITY,

    Defendant.

**OPINION and ORDER**

This matter was before the Court for a bench trial on May 27, 2026. The Court held this bench trial after the parties agreed to adjudicate this case under the Court's Fast Track Litigation process outlined in General Order 2025-15. [*See* DEs 66, 69, and 70, and General Order 2025-15, *available* at 2025-15.pdf.] Plaintiff Heidi Davonne Brown ("Mx. Brown") appeared pro se, and Defendant, the South Bend Housing Authority ("SBHA"), appeared by counsel Jewell Harris, Jr. The Court now issues the following opinion and order, including findings of fact and conclusions of law, under Federal Rule of Civil Procedure 52(a).

## I.    Procedural Background

Mx. Brown filed this case along with a motion to proceed *in forma pauperis* on March 25, 2024. On April 3, 2024, the Court denied the motion to proceed *in forma pauperis* and allowed Mx. Brown to file an amended complaint to become compliant with the federal rules. [DE 3 at 3]. Mx. Brown timely filed an amended complaint as ordered. In this operative amended complaint, Mx. Brown brought two claims against

SBHA: first, Mx. Brown alleged that the SBHA violated the Health Insurance Portability and Accountability Act ("HIPAA") by sharing certain private information; and second, Mx. Brown alleged that the SBHA wrongfully terminated them from the Housing Choice Voucher ("HCV") program in violation of the Fair Housing Act ("FHA"), which prohibits discrimination by housing providers because of race, color, religion, sex, national origin, family status, or disability. The Court granted Mx. Brown leave to proceed on the latter FHA discrimination claim. [DE 6].

The SBHA answered Mx. Brown's complaint on July 8, 2025, [DE 11], and the parties then consented to the jurisdiction of a magistrate judge to adjudicate the case to final disposition.[1] After a delay in receiving a status report from Mx. Brown [*see* DE 27], the Court held a Rule 16(b) Preliminary Pretrial Conference on April 2, 2025, and issued a Rule 16(b) Scheduling Order the next day. In this order, the Court set the following dates to control the conduct of discovery and to manage the flow of the case: initial disclosures due by May 2, 2025; deadline for completion of discovery August 25, 2025; and dispositive motions due by September 25, 2025. [DE 34].

The parties conducted minimal discovery in the months following this Scheduling Order. Only the following discovery was filed on the Court's docket, as required by N.D. Ind. L.R. 26-2(a)(2)[2]: the SBHA's initial disclosures [DE 37]; Mx. Brown's interrogatories [DE 40] and the SBHA's answers to these interrogatories [DE

---

[1] The parties consented to the jurisdiction of a magistrate judge on August 8, 2024, and the case was then reassigned to the undersigned magistrate judge on August 15, 2024. The parties also consented to the continued jurisdiction of the undersigned. [*See* DEs 15, 16].

[2] Local Rule 26-2(a)(2) provides that "[a]ll discovery material in cases involving a pro se party must be filed."

43]; and the SBHA's Request for Admissions [DE 41], which went unanswered by Mx. Brown. The discovery period then closed, and no dispositive motions were filed by the September 25, 2025, deadline. The Court then held a telephonic status conference on December 16, 2025, to discuss the status of any settlement negotiations or trial scheduling. [DE 47, DE 50]. During this status conference, counsel for the SBHA first requested leave to file a belated motion for extension of time to file a dispositive motion. The Court ordered SBHA to file any such motion in writing. Next, the parties agreed to consider settlement negotiations by participating in a judicial settlement conference, so the Court referred the case to United States Magistrate Judge Andrew P. Rodovich for settlement. Finally, the parties also agreed to set a jury trial, with the Court setting a jury trial to commence on September 1, 2026. [*See* DE 52, DE 54].

Judge Rodovich held a telephonic status conference to schedule the judicial settlement conference on January 16, 2026. Neither party appeared. Thus, a judicial settlement conference was scheduled for February 17, 2026, without input from the parties. [*See* DE 57]. But then Mx. Brown also failed to appear for the settlement conference, so the Court ordered Mx. Brown to show cause why the case should not be dismissed for failure to prosecute. [*See* DEs 61, 62]. After hearing from Mx. Brown ten days later [DE 63], the Court rescheduled the judicial settlement conference for March 26, 2026. Both parties appeared at this second settlement conference. The case did not settle, but the parties agreed to adjudicate the remainder of the case under the Court's Fast Track Litigation process in General Order 2025-15. The Court accordingly vacated

3

the jury trial, denied Defendant's motion for leave to file a belated dispositive motion, and scheduled a status conference for purposes of selecting a date for a bench trial.

After a telephonic status conference on April 7, 2026, the Court scheduled an in-person bench trial for May 27, 2026, as well as a telephonic final pretrial conference for May 20, 2026, at 11:00 a.m. (EDT). [DE 70]. The Court's order also set deadlines for the parties to exchange witness and exhibit lists and to file proposed findings of fact and conclusions of law.

The Court then provided dial-in information for the final pretrial conference via email on May 15, 2026. Mx. Brown confirmed receipt. [*See* DE 80]. Still, Mx. Brown did not dial in at the start time, prompting the Court to contact them via telephone. Mx. Brown answered the Court's call, and the Court proceeded with the final pretrial conference as scheduled.[3]

Defendant filed proposed findings of fact and conclusions of law on May 22, 2026. Mx. Brown did not submit any proposals. The Court then held the bench trial on May 27, 2026. After opening statements began, Mx. Brown moved to continue the remainder of the bench trial, stating that they were not prepared to proceed. The Court denied the motion, and Mx. Brown proceeded to present their case. After Mx. Brown rested, Defendant made an oral motion for judgment on partial findings under Federal Rule of Civil Procedure 52(c), asserting that Mx. Brown failed to prove an essential

---

[3] Mx. Brown then contacted staff from the Clerk's office, stating that they were "called a day last week from the court chambers of Judge Frankel where a telephone conference was conducted." [DE 80; DE 81 at 2]. Mx. Brown stated they were "not only unprepared. [They were] instantly required to comply with the phone call" and explained that they had not "anticipated the event according to [their calendar]." [*Id.* at 2-3.] Upon notification of this correspondence, the Court contacted Mx. Brown to remind them of prior notifications about the final pretrial conference. [*Id.* at 1].

element of their discrimination claim. The Court took the motion under advisement and continued with the remainder of the bench trial. The trial concluded that same day.

After considering the parties' arguments and evidence, the Court now enters the following findings of fact and conclusions of law, based on the parties' consent under 28 U.S.C. § 636(c). [*See* DE 15, DE 16].

## II.     Findings of Fact

1.      Mx. Brown identifies as a nonbinary individual. [Partial Trial Tr. 2:13; DE 84 at 2].

2.      Mx. Brown was a participant in the Housing Choice Voucher ("HCV") Program administered by the Defendant, the South Bend Housing Authority ("SBHA"), during this period. [Def. Ex. A].

3.      As a condition of Mx. Brown's participation in the HCV Program, Mx. Brown was required to adhere to certain requirements called "Family Obligations." [Def Ex. A].

4.      Mx. Brown signed an acknowledgment of these Family Obligations on October 27, 2023. [Def. Ex. A. at 2].

5.      Among the Family Obligations is a requirement to "[s]upply any information requested by SBHA or HUD [U.S Department of Housing and Urban Development] for use in regularly scheduled reexamination or interim reexamination of family income or composition." [Def. Ex. A at 1].

6.      The reexamination process requires recipients to provide verification of any changes to family status or income to recertify that the family is still

eligible for the HCV Program. [HCV Program Director Tiffaney Murphy, Testimony at Bench Trial at 12:07:28 (N.D. Ind. May 27, 2026) (audio on file with court)].

7. The documentation required for this recertification process includes the recertification application, where participants report income and family information and provide supporting documents for this information. The SBHA also uses an electronic income verification tool from HUD. This electronic tool shows income earned from various sources. [*Id.* at 12:07:59-12:08:55].

8. The electronic income verification tool recorded two jobs and unemployment income that were not reported by Mx. Brown on their recertification application. [*Id.* at 12:11:34 – 12:12:23]

9. The SBHA requested verification of this income within ten business days. Mx. Brown did not respond. [*Id.* at 12:12:23 – 12:13:02].

10. Had Mx. Brown responded timely, their Housing Choice Voucher would have been renewed. [*Id.* at 12:21:25].

11. As Mx. Brown did not respond to SBHA's inquiry for verification, Mx. Brown was then issued a Notice of Intent to Terminate Housing Choice Voucher on or about December 13, 2023. [Def. Ex. B]

12. The Notice of Intent to Terminate states that the termination is based on Mx. Brown's failure to comply with any Family Obligations under the Program, Mx. Brown's failure to report income timely and money owed,

and Mx. Brown's failure to return all required documentation for annual certification. [Def. Ex. B].

13. Mx. Brown then requested, and was granted, a grievance hearing concerning the termination of this voucher. [Def. Ex. C].

14. The grievance hearing was held on March 26, 2024. [Def. Ex. C].

15. On April 2, 2024, the hearing officer issued a decision upholding the termination of Mx. Brown's voucher. [Def. Ex. D].

16. The hearing officer's memorandum states that Mx. Brown "admitted that [they] understood [their] violations of unreported income as well as not completing [their] annual recertification." [Def. Ex. D].

17. On April 14, 2024, Mx. Brown acknowledged receipt of the hearing officer's decision and requested an appeal of the decision. [Def. Ex. G].

18. On April 15, 2024, a representative from SBHA advised Mx. Brown that the decision was final and that, under 24 C.F.R. § 982.555, there are no further administrative appeals. [Def. Ex. G].

19. Mx. Brown has alleged that they were wrongfully terminated from the HCV Program and that the SBHA discriminated against them based off sex, religion, age, familial status, color, education, and national origin. [Plf. Am. Compl. at 2, ¶¶4-5; DE 4 at 2].

20. At the bench trial, Mx. Brown testified that the evidence of discrimination against them is "not something that can[] be seen." [Partial Trial Tr. 3:20; DE 84 at 3].

21.     Mx. Brown also testified that they "don't think at this point [they] even have to rely on evidence because . . . the fact that [they were] even receiving subsidy [the Housing Choice Voucher] and that we're here is enough." [Partial Trial Tr. 3:21-24; DE 84 at 3].

## III.     Conclusions of Law

Mx. Brown is proceeding on a discrimination claim under the Fair Housing Act ("FHA"). [DE 6 at 2]. The FHA prohibits discrimination in the financing, sale, or rental of housing. *Farhan v. 2715 NMA LLC*, 161 F.4th 475, 480 (7th Cir. 2025). Section 3604(a) of the FHA prohibits the refusal to sell or rent, or to "otherwise make unavailable or deny" a dwelling based on race, color, religion, sex, familial status, or national origin. *See* 42 U.S.C. § 3604(a). Section 3604(b) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of" a protected status. 42 U.S.C. § 3604(b). Section 3604's protections apply even after an individual has purchased a home or rented an apartment. *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 861 (7th Cir. 2018).

There are two ways for a plaintiff to allege discrimination under § 3604: disparate impact or disparate treatment (intentional discrimination). *Farhan*, 161 F4th at 480. Under a disparate impact theory, a plaintiff may bring a claim "based on a decision or policy that has a discriminatory effect and no legitimate business or public interest justification, even if there is no evidence the defendant intended to discriminate." *Id.* Here, Mx. Brown has alleged the latter, that SBHA "took action" "*because of* [their]

8

protected status" — here, terminating their Housing Choice Voucher because of their status as a nonbinary individual. *Id.* (emphasis in original); *see also Bloch v. Frischholz, 587 F.3d 771, 783 (7th Cir. 2009)*("Discriminatory intent is the pivotal element in this case.").

Discriminatory intent may be shown either directly or indirectly. "Direct evidence is that which can be interpreted as an acknowledgment of the defendant's discriminatory intent." *Kormoczy v. Sec'y, U.S. Dep't of Hous. & Urb. Dev. on Behalf of Briggs, 53 F.3d 821, 824 (7th Cir. 1995).* If a plaintiff shows disparate treatment under this approach, the defendant must then "provide by a preponderance of the evidence that it would have made the same decision absent the impermissible factor." *Id.*

But under the latter approach, the *McDonnell Douglas* burden-shifting analysis applies, and a plaintiff alleging disparate treatment under the FHA must first prove the following elements to make a prima facie case: "1) [they are] a member of a protected class; 2) Defendant[] knew it; 3) [they were] qualified to rent the apartment; and 4) Defendant[] refused to rent [them] an apartment despite [their] qualifications." *Cavalieri-Conway v. L. Butterman & Assocs., 992 F. Supp. 995, 1005 (N.D. Ill. 1998)*, *aff'd sub nom. Cavalieri v. L. Butteman & Assocs., 172 F.3d 52 (7th Cir. 1999).* Once these elements are shown, the burden then shifts to the defendant "to offer a nondiscriminatory justification for the challenged . . . action." *Groves v. S. Bend Cmty. Sch. Corp., 51 F.4th 766, 770 (7th Cir. 2022).* If defendant meets this burden, the plaintiff would then need to show that this "proffered nondiscriminatory reason amounted to

9

pretext for discrimination" to prove their claim. *Id.* Mx. Brown was not clear about which method supports their allegations, so the Court addresses both here.

Mx. Brown is nonbinary and part of a protected class. The SBHA did not dispute this. But Mx. Brown has not shown that their termination from the Housing Choice Voucher program was based on discriminatory intent. Mx. Brown presented no evidence to support the contention that SBHA's decision to terminate Brown from the HCV Program was based on any discriminatory animus. Indeed, Mx. Brown appeared to concede to the lack of direct evidence during the trial, stating that they believe that they do not need to present any such evidence. [Trial Tr. 3:21-24; DE 84 at 3]. Thus, there was no direct evidence to support Mx. Brown's claim.

Mx. Brown did state they do not believe the evidence of discrimination against them is something that can be seen. [Trial Tr. 3:20; DE 84 at 3]. Even construing this as an argument for the indirect approach of proving discrimination, the SBHA presented evidence that Mx. Brown's termination from the program was based upon legitimate non-discriminatory factors. The SBHA presented evidence that, under the HCV Program, Mx. Brown was required to adhere to certain Family Obligations. [Def Ex. A]. Mx. Brown was aware of these obligations, as SBHA's evidence shows that Mx. Brown received a copy of the Family Obligations and signed them on October 27, 2023. As part of these obligations, Mx. Brown was to "[s]upply any information requested by SBHA or HUD [U.S Department of Housing and Urban Development] for use in regularly scheduled reexamination or interim reexamination of family income or composition." [Def. Ex. A at 1]. During the reexamination of Mx. Brown's family income and

10

composition, SBHA's electronic verification tool showed that Mx. Brown failed to report all their income on the recertification application. Mx. Brown then failed to timely respond to SBHA's request to verify the additional income found, prompting the decision to terminate them from the program. The decision to terminate Mx. Brown was then upheld after an administrative hearing held on March 26, 2024. This evidence shows that Mx. Brown was terminated for failure to comply with program rules, and is therefore a "nondiscriminatory justification for the challenged . . . action." *Groves,* 51 F.4th at 770. Indeed, the purpose of requesting certain information on reexamination is to recertify participants' eligibility for the HCV Program.  Mx. Brown presented no evidence suggesting that this reason for their termination amounted to pretext for discrimination.

Thus, Mx. Brown's discrimination claim under the FHA must fail.

## IV.   Conclusion

For these reasons, Plaintiff Heidi Davonne Brown has failed to present evidence of an essential element of their discrimination claim brought under the Fair Housing Act. Thus, Defendant's oral motion for judgment under Federal Rule of Civil Procedure 52(c) is **GRANTED**. [DE 82]. The Clerk is **DIRECTED** to enter judgment for Defendant, the South Bend Housing Authority, and terminate this case.

**SO ORDERED** this 14th day of July 2026.

s/Scott J. Frankel
Scott J. Frankel
United States Magistrate Judge